UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SFP WORKS, LLC,

      Plaintiff,

                                       Case No. 14-13575

v.                                    Hon. Gerald E. Rosen

BUFFALO ARMORY LLC,

      Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION
TO COMPEL ACCESS TO OPERATIONAL DATA**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        November 19, 2015

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

By motion filed on July 10, 2015, Plaintiff SFP Works, LLC seeks an order

compelling Defendant Buffalo Armory LLC to provide complete access to certain data

captured during Defendant's operation of a steel heat-treating process that forms the basis

for Plaintiff's underlying claim of patent infringement.  Although Defendant produced

this data, as well as related information, in response to Plaintiff's discovery requests,

Plaintiff states that it has been unable to gain access to this data with the viewing software

provided by Defendant.  Accordingly, Plaintiff requests that Defendant be compelled to

provide further assistance in Plaintiff's effort to view and analyze this data.  In response,

Defendant contends that Plaintiff's motion is untimely, and that Plaintiff has

unreasonably declined a number of options proposed by Defendant for securing access to the requested data.  As discussed below, the Court agrees with Defendant that Plaintiff's motion should be denied.

Under the Court's November 18, 2014 scheduling order, a motion to compel discovery must be filed within fourteen days after the moving party has notice of the dispute giving rise to the motion.  In its present motion, Plaintiff complains of its inability to view and analyze data that Defendant produced on or around February 20, 2015.  Yet, Plaintiff did not seek the Court's intervention in this matter until June 30, 2015, over four months after it received the data in question from Defendant.[1]  It would appear, then, that Plaintiff has forfeited its opportunity to seek relief from the Court by failing to pursue this matter within fourteen days after Defendant provided the data giving rise to the present dispute.[2]

To be sure, it could perhaps be argued that the parties' dispute did not fully ripen until some time after Defendant produced the data in question.  In particular, when Defendant provided this data on February 20, 2015, it acknowledged in an accompanying

---

[1]As noted earlier, the present motion was filed on July 10, 2015.  This July 10 submission, however, is essentially identical to a motion Plaintiff filed under seal on June 30, 2015.  By order dated July 7, 2015, the Court struck Plaintiff's June 30 motion from the docket as impermissibly filed under seal without a court order authorizing this sealed filing, and Plaintiff responded by promptly filing the present, unsealed motion on July 10.

[2]As Defendant observes, there is no question that Plaintiff was aware of the Court's fourteen-day deadline for bringing a motion to compel, as the parties previously stipulated to an extension of this deadline with respect to another discovery dispute.  (*See* 2/25/2015 Stipulated Order.)

letter that it was producing its data files "in native format, the way they are kept in the

ordinary course of business," and that Plaintiff therefore would need to obtain specialized

third-party software in order to view the data in these files.  (Defendant's 7/24/2015

Response, Ex. 1.A, 2/20/2015 Letter at 1.)[3]  Over a month later, Plaintiff addressed this

matter in an April 3, 2015 letter to Defendant, stating (i) that a license for the software

needed to view the data files produced by Defendant, along with the necessary training

and technical support, would cost approximately $6,000, and (ii) that in order to avoid

this expense, it would be preferable if Defendant could provide hard-copy printouts of the

pertinent data, as it had already done for certain runs of its accused process.  (*See*

Defendant's 7/24/2015 Response, Ex. 1.B, 4/3/2015 Letter at 3.)  In response, Defendant

offered to provide printouts of the data if Plaintiff would cover the cost of this

production, and it also provided Plaintiff with a copy of free software it had obtained

from a third-party vendor for viewing the data files it had produced back in February.

(*See* Defendant's 7/24/2015 Response, Ex. 1.C, 4/10/2015 Letter at 2; Ex. 1.E, 4/29/2015

Letter at 1.)

This free software, unfortunately, did not put this matter to rest.  Rather, in a May

20, 2015 conversation between counsel, and then again in an e-mail dated May 27, 2015,

Plaintiff indicated that it still was unable to access the data produced by Defendant back

---

[3]As observed in Defendant's February 20 letter, at least some of the data contained in
these electronic files was accessible to Plaintiff without the need for any such software, as
Defendant had separately provided hard-copy printouts of the data from certain runs of its
accused process.

in February, and it suggested either (i) that the data provided by Defendant was "corrupt in some way," or (ii) that the viewing software obtained from the third-party vendor was "not suitable" for gaining access to this data. (*See* Defendant's 7/24/2015 Response, Ex. 1.F, 5/27/2015 E-mail.) Following further communications among the parties and the third-party vendor, Defendant was advised by the vendor in a June 4, 2015 e-mail that Plaintiff had been in direct contact with this vendor on several occasions since late April regarding its lack of success in using the vendor's software to view the data produced by Defendant. (*See* Defendant's 7/24/2015 Response, Ex. 1.H, 6/4/2015 E-mail.) According to the third-party vendor, Plaintiff had exhausted the vendor's willingness to provide any further free technical support, and the vendor had offered Plaintiff three options, ranging in cost from a few hundred dollars to over $4,000, if it desired additional assistance from the vendor in gaining access to the data produced by Defendant. (*See id.*)

Shortly after Defendant learned of Plaintiff's unsuccessful efforts to work with the third-party vendor in securing access to Defendant's data, the parties exchanged a number of e-mails regarding Plaintiff's continued inability to read and analyze this data. First, on June 8, 2015, Defendant proposed three possible solutions to Plaintiff in light of its difficulties with the third-party vendor's free software: (i) Plaintiff could buy a license to the full software package that Defendant had used to generate the underlying data produced to Plaintiff back in February; (ii) Plaintiff could pay the "nominal cost" sought by the third-party vendor to continue to troubleshoot the free software provided by

Defendant, or (iii) Plaintiff could identify up to ten dates for which Defendant could provide hard-copy printouts of data generated through its use of the accused process. (Defendant's 7/24/2015 Response, Ex. 1.I, 6/8/2015 E-mail.)  In an e-mail dated June 9, 2015, Plaintiff rejected these proposals, stating (i) that it had no duty to "acquire software at significant expense in order to simply review information [Defendant] is obligated to provide," (ii) that the technical support costs "quoted by the vendor are not 'nominal,'" and (iii) that Defendant should re-load the data it had previously provided to Plaintiff into its own system in order to ensure that Plaintiff's inability to review this data was not "due to data corruption."  (Defendant's 7/24/2015 Response, Ex. 1.I, 6/9/2015 E-mail.) Defendant responded the next day, opining that it had "no reason, or ability," to re-load into its own system the data it had produced to Plaintiff back in February, where this data had been "forensically retrieved by our vendor" and Defendant thus was "confident" that the data given to Plaintiff was "exactly what you asked for."  (Defendant's 7/24/2015 Response, Ex. 1.I, 6/10/2015 E-mail.)  Accordingly, Defendant flatly informed Plaintiff that "[t]here is simply nothing more we can do and nothing more the Federal Rules require us to do."  (*Id.*)

As this lengthy procedural history makes clear, the present discovery dispute ripened, at the very latest, on June 10, 2015.  By that date, Plaintiff had expressly rejected each of Defendant's proposals for resolving this dispute.  In addition, Plaintiff was fully aware by that date (i) that it remained unable to review and analyze the data produced by

Defendant, and (ii) that Defendant did not intend to take any further steps to assist

Plaintiff in overcoming this technical hurdle.  Yet, even assuming that the present dispute

were deemed to have arisen on June 10, rather than in late February when Defendant

produced the data giving rise to this dispute, Plaintiff nonetheless failed to seek the

Court's intervention in this dispute within fourteen days after Defendant explicitly

advised Plaintiff on June 10 that it would take no further action to assist Plaintiff in

gaining access to the data it had previously provided.  Instead, Plaintiff first brought this

dispute to the Court's attention twenty days later, when it filed a June 30, 2015 motion to

compel Defendant to implement one or more measures designed to ensure Plaintiff's

access to Defendant's data.[4]  Under the terms of the Court's scheduling order, this motion

was filed too late to secure the Court's intervention in the parties' dispute.

In response to Defendant's challenge to the timeliness of its motion, Plaintiff does

not dispute the accuracy of Defendant's account of the parties' dispute.  Rather, Plaintiff

contends — in the span of two short sentences in its reply brief in further support of its

motion — that the matter presently before the Court is not properly characterized as a

"discovery dispute," and thus is not subject to the fourteen-day deadline for bringing such

disputes to the attention of the Court.  In Plaintiff's view, its present motion does not

address any deficiencies in or objections to a party's production of data, but instead

concerns the "proper apportionment of costs and burdens in rendering accessible data that

---

[4]As noted earlier, this June 30, 2015 motion was stricken from the docket, and Plaintiff
then re-filed essentially the same motion on July 10, 2015.

a party has already produced." (Plaintiff's 8/3/2015 Reply Br. at 1.)

The Court cannot accept Plaintiff's proposed distinction between (i) a party's outright failure to provide information in response to a request for discovery, and (ii) a party's failure to take the necessary steps to ensure that the information it has produced is accessible to the requesting party. To the contrary, it is evident from Plaintiff's own motion that the parties' present dispute as to the "proper apportionment of costs and burdens" in ensuring Plaintiff's access to Defendant's data is governed by the very same Federal Rule that gave rise to Defendant's threshold obligation to produce this data in the first instance — namely, Rule 34, which requires in pertinent part that electronically stored information ("ESI") ordinarily must be produced "in a form . . . in which it is ordinarily maintained or in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(ii). Indeed, Plaintiff expressly states in its motion that it seeks relief "pursuant to the ESI access obligations of Rule 34." (Plaintiff's 7/10/2015 Motion to Compel, Br. in Support at 6.) Because Plaintiff challenges a course of action (or inaction) that is part and parcel of Defendant's obligation to comply with a discovery request served under Rule 34, it readily follows that Plaintiff's motion raises a discovery dispute that is subject to the Court's fourteen-day limit for bringing a motion to compel.

Finally, even if Plaintiff's motion had been timely filed, the Court agrees with Defendant that this motion is unnecessary. As one form of relief proposed in its motion, Plaintiff requested that it be granted access to Defendant's own software at its facility in

7

Buffalo, New York, so that Plaintiff could use this software to review the data produced by Defendant.  (*See* (Plaintiff's 7/10/2015 Motion to Compel, Br. in Support at 7.)  Yet, the day after Plaintiff initially sought the Court's intervention in the present discovery dispute, defense counsel sent an e-mail to Plaintiff's counsel proposing precisely this solution to the parties' dispute.  (Defendant's 7/24/2015 Response, Ex. 1.K, 7/1/2015 E-mail.)  Thus, if Plaintiff had simply accepted this offer — to say nothing of the various options proposed by Defendant back on June 8, 2015 — the parties' dispute would have been resolved without the involvement of the Court.

In its reply brief, Plaintiff complains that a visit to Defendant's facility has now been "effectively foreclosed," in light of the Court's July 15, 2015 order denying Plaintiff's request for an indefinite extension of the discovery period so that it could inspect Defendant's steel processing line once it was restored to operation.  (Plaintiff's 8/3/2015 Reply Br. at 5.)  The Court, however, fails to see why Plaintiff could not have still pursued this option, despite the fact that it could no longer fulfill another desired objective and "kill two birds with one stone" through a single visit to Defendant's facility. While the Court recognizes that Plaintiff has been inconvenienced during the discovery period, both through the failure of Defendant's steel processing line just prior to a scheduled inspection and by virtue of Plaintiff's inability to gain access to the data produced by Defendant from the operation of this line, the record indicates that Plaintiff has failed to mitigate this inconvenience by pursuing any of a number of seemingly

reasonable remedial measures, whether proposed by Defendant or devised by Plaintiff itself.  Instead, Plaintiff has chosen a course of action that has needlessly taxed the resources of the parties and the Court alike, and its delay in doing so has effectively precluded the Court — both by operation of its fourteen-day rule and as a practical matter — from fashioning relief that would improve upon the options that were available to Plaintiff all along.

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's July 10, 2015 motion to compel access to operational data (docket #40) is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  November 19, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 19, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135